(C. D. 89)

W. J. BUSH & Co. *v.* UNITED STATES

United States Customs Court, First Division

(Decided February 2, 1939)

*Puckhafer & Rode* (*George J. Puckhafer* of counsel) for the petitioner.
*Charles D. Lawrence,* Acting Assistant Attorney General (*Richard F. Weeks,* special attorney), for the respondent.

Before McCLELLAND, SULLIVAN, and BROWN, Judges; BROWN, J., dissenting

McCLELLAND, Presiding Judge: This is a petition for the remission of additional duties filed under the provisions of section 489 of the Tariff Act of 1930. The class of merchandise involved was smelling salts bottles with bakelite tops imported from England. It appears that the importer made three importations of such merchandise over a

period of about a year and a half, one of which formed the basis of the entry here involved, and that the customs broker to whom the importer had delivered the invoice upon which to make the first entry, before making such entry called upon Examiner Simonetti, whose business it was, at that time, to pass upon and appraise, subject to the approval of the United States appraiser at the port of New York, all such merchandise.

The broker, upon being called to testify in support of the petition, among other things said that Mr. Simonetti at the time of his call told him that he was not prepared to give him information as to the values at which the bottles should be entered, and that if the importer would arrange for what is known as a single entry bond, he would permit delivery of the merchandise and hold the invoice in each case and when the investigation which was then being made was complete if it became necessary he would give the broker an opportunity to recall the invoices and amend the entries.

Entry was therefore made of each of the shipments, and the broker also testified that about a year later Mr. Simonetti telephoned him suggesting that he amend two of the entries, which he did in accordance with the information supplied by the examiner. From the memorandum slip offered in evidence by petitioner's counsel and received without objection as Exhibit 1 it appears that the broker was informed by the examiner that the investigation showed a value 18.8 per centum higher than that stated on the first and last entries in point of time. Later it developed that the merchandise covered by the third entry, the second in point of time and the one here involved, was appraised by Mr. Simonetti, and an advance over the invoiced unit value, which was about 1 per centum less than the entered value, was made, and is expressed on the invoice in the following language: "Appraised at invoice unit value, plus 10 per cent, plus 8 per cent." It is the additional duties resulting from these advances that are now sought to be remitted.

An examination of the invoice covered by this entry shows that it bears the notation in pencil "notified to amend, 2/23/37." The witness Shapiro, who succeeded Mr. Simonetti as examiner of glassware, testified that that pencil notation was in the handwriting of Mr. Simonetti. It appears from an examination of the summary sheet attached to the invoice that appraisement was not made until fifty-three days after the notification to amend was sent to the importer or his broker. In explanation of that lapse of time and failure to amend as the notation suggests, the broker testified as follows:

Q. Did you in fact amend certain entries?—A. We amended, I think about a year after the entries were made, he called us on the phone, and he said, I have a few entries, and I want you to amend. I will give a slip to your man who works up here. So he gave us a slip and we amended two entries. About a week after

he said: I think I have another entry to be amended, and he gave us the entry number over the phone, and I said: Why, that entry has been amended. So that was the end of it. That was the end of that entry.

Q. Which were the two entries that were amended?—A. The entries were amended, I have the copies here.

Judge BROWN. The third was not amended?

The WITNESS. The third was not amended.

Judge BROWN. By mistake?

The WITNESS. By mistake.

By Mr. PUCKHAFER:

Q. Let's have the numbers of the entries which were amended.—A. 769003, and 809402.

Q. And the entry which was not amended, is the entry covered by this petition, 813380, is that correct?—A. That is right.

It is apparent from the foregoing that the broker relied entirely upon the examiner, not only for information as to the value to be used in amendment of the entries, but also for information as to the numbers of the entries that should be amended.

At the time of entry of the merchandise involved the practice of furnishing information to importers as to values was governed by articles 297 (e) and 782 of the Customs Regulations of 1931. Article 297 (e), *supra*, reads as follows:

(e) Information as to values shall not be given by customs officers in connection with amendment of entries except upon compliance with the provisions of article 782.

Article 782, *supra*, so far as pertinent, read as follows:

The appraiser may, in his discretion, furnish to importers the latest information as to values in his possession, subject to the following conditions:

None of the conditions which followed required the appraiser to do other than furnish information as to values, if he elected so to do. He was not required, and in our view it was no part of his duty, to inform an importer or his agent which of his entries were to be amended in accordance with the information so furnished, and we do not think that an importer who relied upon such official for that information can be excused from the results of such reliance.

As hereinbefore set forth, there were three entries covering identical merchandise, smelling salts bottles with black bakelite tops, on which appraisement had been withheld by the examiner. Entry 809402 covered merchandise which arrived April 5, 1935; the merchandise covered by entry 813380, which is the entry in issue, arrived on April 16 of the same year, while that covered by entry 769003 arrived on November 13, 1936. Manifestly, the broker was placed upon notice when informed by the examiner of an advance of 18.8 per centum on the first and last entries mentioned that the long-awaited report on the investigation with regard to the merchandise was in

the appraiser's hands. It was his duty, upon being advised of a uniform advance on merchandise which arrived, and was presumably entered, on such widely separated dates as April 5, 1935, and November 13, 1936, to inform himself as to whether the said advance or any part of it applied also to the merchandise which arrived and was entered between those dates. In other words, it was his duty—not the examiner's—to keep track of his own entries.

In *United States* v. *Fish*, 268 U. S. 607, at page 612 the court said:

\* \* \* The issue to be found by the Board [now Customs Court] was whether the importer showed by his evidence that the entry of the merchandise at a less value than that returned upon final appraisement was without any intention to defraud the revenue of the United States or to conceal or misrepresent the facts of the case or to deceive the appraiser as to the value of the merchandise. The issue presented to the Board was, "Has the importer sustained the negative in this regard?" \* \* \* Both the importer and the Government are entitled to a finding either that there was no intent to defraud or that the importer did not sustain his burden that there was no such intent.

and in *United States* v. *American Metal Co.*, 12 Ct. Cust. Appls. 440, T. D. 40612, the Court of Customs and Patent Appeals, speaking through Presiding Judge Graham and referring to the proceedings permitted by section 489, *supra*, said:

\* \* \* We do not wish to be understood as indicating in any manner here that the importer can in such cases avow his good faith and intentions and ipso facto avoid the imposition of the additional duty. Such a practice would lead to endless abuses and frauds upon the customs, and the statute would, as suggested by counsel for the Government here, become a nullity. *Nor can he stand by, having an opportunity to inform himself of the value of his importation, and excuse himself alone by his ignorance of its true value.* [Italics ours.]

The information given to the broker by the examiner with regard to entries 809402 and 769003 was such as would have put a reasonably prudent person upon inquiry as to the value of the merchandise covered by entry 813380. The broker having failed to take advantage of the opportunity of informing himself as to the value of the merchandise covered thereby, it cannot be said that the petitioner has sustained the burden of showing that no intent to defraud existed.

The petition is therefore denied. Judgment will issue accordingly.

### DISSENTING OPINION

Brown, Judge: The failure to amend the second entry at the time the first and third were amended was plainly an accident or mistake either on the part of the examiner or the broker.

The filing of the single entry bond during the Government's investigation protected the Government completely and insured that it would collect every cent of the regular duties chargeable. The importer left himself entirely in the Government's hands. Such circumstances completely repel any intent to defraud or deceive.

Remission of penalizing additional duties should be granted.